## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF COLORADO

Civil Action No.

ETS LOGISTICS INC.,

                Plaintiff,

      v.

UQM TECHNOLOGIES, INC., JOE
MITCHELL, STEPHEN J. ROY,
JOSEPH P. SELLINGER, JOHN E.
SZTYKIEL, and DONALD W.
VANLANDINGHAM,

                Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff ETS Logistics Inc. ("Plaintiff"), by its attorneys, alleges upon information and belief, except for its own acts, which are alleged on knowledge, as follows:

## INTRODUCTION

1.    Plaintiff brings this action against UQM Technologies, Inc. ("UQM" or the "Company") and the Company's Board of Directors (collectively, the "Board" or the "Individual Defendants," as further defined below) for violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed acquisition of UQM by Danfoss Power Solutions (US) Company ("Danfoss"). Specifically, Defendants solicit stockholder approval in connection with the sale of the Company through a proxy statement that omits material facts necessary to make the statements therein not false or misleading. Stockholders need this material information to decide whether to vote in favor of the merger.

2.      On January 22, 2019, the Company announced that it had entered into a definitive agreement (the "Merger Agreement") with Danfoss, pursuant to which each QBM stockholder will be entitled to exchange their QBM common stock for $1.71 per share (the "Merger Consideration") in a transaction valued at approximately $100 million (the "Proposed Transaction"). Following the merger, UQM will become part of Danfoss and no longer trade on public markets.

3.      In connection with the Proposed Transaction, on February 11, 2019, the Company authorized the filing of a materially incomplete and misleading preliminary proxy statement on Form PREM14A (the "Proxy") with the Securities and Exchange Commission ("SEC").  The Proxy is materially deficient and misleading because, inter alia, it fails to disclose material information about (i) the financial projections of UQM; and (ii) the valuation analyses prepared by UQM's financial advisor, Duff & Phelps, LLC ("Duff & Phelps"), in connection with the rendering of its fairness opinion.  Without this material information, the Proxy materially misleads UQM stockholders regarding the fair value of their UQM stock, and UQM stockholders cannot make an informed decision regarding whether to vote for or against the Proposed Transaction.

4.      The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act as stockholders need such information in order to make a fully-informed decision in connection with the shareholder vote on the Proposed Transaction. For these reasons and as set forth in detail herein, the Individual Defendants have violated federal securities laws.  Accordingly, Plaintiff seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Individual Defendants' violations of these laws.  Judicial intervention is warranted here to rectify existing and future irreparable harm to the Company's stockholders.

## JURISDICTION AND VENUE

5.      The claims asserted herein arise under §§ 14(a) and 20(a) of the Exchange Act, 15 U.S.C. § 78aa.  The Court has subject matter jurisdiction pursuant to § 27 of the Exchange Act, 15 U.S.C. §78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6.      The Court has personal jurisdiction over each of the Defendants because each conducts business in and maintains operations in this District or is an individual who either is present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper in this District under § 27 of the Exchange Act, 15 U.S.C. §78aa, as well as pursuant to 28 U.S.C. § 1391, because: (i) the conduct at issue took place and had an effect in this District; (ii) UQM maintains its principal place of business in this District and each of the Individual Defendants, and Company officers or directors, either resides in this District or has extensive contacts within this District; (iii) a substantial portion of the transactions and wrongs complained of herein, occurred in this District; (iv) most of the relevant documents pertaining to Plaintiff's claims are stored (electronically and otherwise), and evidence exists, in this District; and (v) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

8.      Plaintiff is, and has been at all relevant times, the owner of shares of UQM common stock.

9.      Defendant Joseph R. Mitchell has served as the President, Chief Executive Officer, and as a director of the Company since January 2016.

10.      Defendant Stephen J. Roy has served as a director of the Company since 2000.

11.     Defendant Joseph P. Sellinger has served as a director of the Company since 2008.

12.     Defendant John E. Sztykiel has served as a director of the Company since 2012.

13.     Defendant Donald W. Vanlandingham is the Company's Chairman of the Board and has served as a director of the Company since 2003.

14.     Defendants Mitchell, Roy, Sellinger, Sztykiel, and Vanlandingham, are collectively referred to as "Individual Defendants" and/or the "Board."

15.     According to the Proxy, Defendant UQM "is a developer and manufacturer of power-dense, high-efficiency electric motors, generators, power electronic controllers and fuel cell compressors for the commercial truck, bus, automotive, marine, and industrial markets." The Company is incorporated in Colorado and maintains its principal executive offices at 4120 Specialty Place, Longmont, Colorado, 80504. UQM's common stock is listed for trading on the New York Stock Exchange under the ticker symbol "UQM."

16.     The Individual Defendants and UQM are referred to collectively herein as "Defendants."

**OTHER RELEVANT ENTITIES**

17.     According to the Proxy, Danfoss "is a wholly-owned subsidiary of Denmark-based Danfoss A/S, a multi-industry technology provider divided into four business segments: Danfoss Power Solutions, Danfoss Cooling, Danfoss Drives, and Danfoss Heating." Danfoss maintains executive offices in Nordborg, Denmark.

**FURTHER SUBSTANTIVE ALLEGATIONS**

**Company Background**

18.     On January 22, 2019, UQM issued a press release announcing the Proposed Merger.

19.     The press release states in pertinent part:

UQM Technologies, Inc. (NYSE: UQM) today announced that it has entered into a definitive merger agreement with the Danfoss Power Solutions (US) Company, a wholly-owned subsidiary of Denmark-based Danfoss A/S ("Danfoss"), under which Danfoss will acquire all outstanding common shares of UQM for $1.71 per share in an all-cash transaction valued at approximately $100 million, including the assumption of UQM's debt. Danfoss, a privately-owned multinational company with reported sales of €5.8 billion in 2017 (2018 full year results to be released on February 28), is a leading manufacturer of hydraulic systems, drives, motors, and components for the automotive, aerospace, HVAC, and energy industries. The merger anticipates that UQM will become part of the Danfoss Power Solutions segment.

The cash consideration represents a premium of approximately 52.5% over UQM's closing share price on January 18, 2019 and a 71.4% premium to its weighted average trading price over the trailing 60 days. The transaction will be funded with Danfoss' cash on hand and is not subject to any financing condition. The merger agreement was unanimously agreed to by the Boards of Directors of both UQM and Danfoss; GDG Green Dolphin, LLC – which holds approximately 7.4% of the issued and outstanding shares of UQM – and all UQM directors and officers have executed Voting and Support Agreements in favor of the acquisition. Closing of the transaction is subject to approval by two-thirds of UQM shareholders and by the Committee on Foreign Investment in the United States ("CFIUS") as well as other customary closing conditions.

Joe Mitchell, UQM Technologies' President and Chief Executive Officer, stated, "We believe UQM will be an excellent addition to Danfoss as our products, business model, strategy and focus are closely aligned. Being part of a larger global enterprise will greatly improve our position to compete with other international players, open doors to new markets, and provide critical resources for UQM to continue developing the highly-engineered electric propulsion products we're known for today. We believe the transaction positions UQM well for the future – particularly in key geographies such as China and India, where Danfoss already operates – and provides an attractive return for our shareholders. We're proud of our many accomplishments and look forward to a future with Danfoss, with which we can enhance service for our customers, invest in technology, and adapt to the ever-changing dynamics of our core markets." Kim Fausing, President & CEO of Danfoss, added, "It is a great pleasure to announce this transaction with UQM, which will position Danfoss for even stronger performance in the industries we serve. We see fast-growing demand for electric solutions within buses and trucks, off-highway vehicles, and marine markets in response to the more stringent emission regulations being imposed – stimulating interest in the efficiency and productivity gains our solutions bring. With an established North American presence, UQM will complement our global sales and manufacturing footprint nicely, further cementing our strong position in the marine as well as on- and off-highway markets. I look forward to welcoming the UQM team to Danfoss and our business."

The transaction is expected to close in the second quarter of 2019, subject to approval by UQM's shareholders and CFIUS.

**The Proxy Omits Material Information**

20.     On February 11, 2019, UQM filed the Proxy with the SEC in connection with the Proposed Merger. As alleged below and elsewhere herein, the Proxy contains material misrepresentations and omissions of fact that must be cured to allow UQM stockholders to render an informed decision with respect to the Proposed Transaction.

21.     As discussed below, the Proxy omits material information regarding: (i) the Company's financial projections; and (ii) the valuation analyses performed by the Company's financial advisor in connection with the rendering of its fairness opinion.

22.     This material information directly impacts the Company's expected future value as a standalone entity, and its omission renders the statements made materially misleading and, if disclosed, would significantly alter the total mix of information available to UQM stockholders. Accordingly, UQM stockholders are being asked to vote for the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Financial Projections:*

23.     With respect to UQM's projected financial information, the Proxy omits material information that was used by Duff & Phelps to perform the valuation analyses that supported the fairness opinion provided to the Board.

24.     As disclosed in the Proxy, Company management provided internal financial projections for the Company to Duff & Phelps to assist in the provision of a fairness opinion to the Company's Board.

25.     Duff & Phelps used these management projections to calculate the Company's projected unlevered free cash flows by "taking its projected earnings before interest and taxes

["EBIT"], subtracting taxes, adding back depreciation, and subtracting capital expenditures and the investment in net working capital." These unlevered free cash flows were then used in Duff & Phelps' Discounted Cash Flow Analysis ("*DCF Analysis*").

26. Despite this explicit use of the Company's projections for EBIT, capital expenditures, depreciation, and investment in net working capital, the Proxy omits all of the projections provided to Duff & Phelps by Company management, as well as Duff & Phelps' calculated value of projected unlevered free cash flows.

27. Unlevered free cash flow is one of the most important metrics that a stockholder can use to ascertain the operating value of a company, and its use in a number of valuation analyses is central to valuing a company, especially in the context of a merger. Here, the company's estimated unlevered free cash flows and other cash flow projections were utilized by Duff & Phelps in its valuation calculations, specifically in the *DCF Analysis*, and are material to the Company's shareholders. However, the Proxy omits these values.

28. The omission of this material information renders the Proxy false and misleading, including, inter alia, the following sections of the Proxy: (i) "Background of the Transaction;" and (ii) "Opinion of the Company's Financial Advisor, Duff & Phelps."

### *Material Omissions Concerning Duff and Phelps' Financial Analyses*

29. The Proxy describes Duff & Phelps' fairness opinion and the various valuation analyses the financial advisor performed in support of its opinion. However, the description of the Duff & Phelps' fairness opinion and the underlying analyses omits key inputs and assumptions of UQM underlying these analyses. Without this information, as described below, UQM public stockholders are being misled as to what weight, if any, to place on Duff & Phelps' fairness opinion

in determining whether to vote in favor of the Proposed Transaction.  This omitted information, if disclosed, would significantly alter the total mix of information available to UQM stockholders.

30.     Specifically, the Proxy discloses that Duff & Phelps conducted a *Selected Mergers and Acquisitions Transactions Analysis* for UQM. However, the Proxy omits the individual metrics Duff & Phelps calculated for each of the selected transactions analyzed by Duff & Phelps, as well as any benchmarking analyses Duff & Phelps performed for UQM in relation to the target companies.

31.     Similarly, with respect to Duff & Phelps' *Selected Public Companies Analysis*, the Proxy omits the individual metrics Duff & Phelps calculated for each of the selected companies analyzed by Duff & Phelps.

32.     When a bankers' endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses are crucial to a fair presentation of the material facts. Furthermore, the disclosure of projected financial information provides stockholders with the best basis to project the future financial performance of a company, and allows stockholders to understand the financial analyses performed by the company's financial advisor in support of its fairness opinion. This information is therefore material, and must be disclosed if UQM stockholders are to make a fully informed decision. The omission of this information renders the statements made concerning the financial advisor's analyses and opinions materially misleading.

33.     Without such undisclosed information, UQM stockholders cannot evaluate for themselves whether the financial analyses performed by Duff & Phelps were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive

fairness opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required in order to ensure that stockholders can evaluate the extent to which Duff & Phelps' opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

34.     The omission of this information renders certain portions of the Proxy materially misleading, including, inter alia, the following sections of the Proxy: (i) "Background of the Transaction;" and (ii) "Opinion of the Company's Financial Advisor, Duff & Phelps."

35.     Based on the foregoing, the Proxy violates Section 14(a) of the Exchange Act and applicable SEC regulations by materially misleading UQM stockholders. UQM public shareholders lack critical information necessary to evaluate the Proposed Transaction. Moreover, without the key financial information and related disclosures, UQM public shareholders cannot gauge the accuracy and reliability of the financial analyses performed by Duff & Phelps, and whether they can reasonably rely on the financial advisor's fairness opinion.

### Material Omissions Concerning the Description of the Sales Process

36.     The Proxy omits whether the confidentiality agreements entered into between the Company and two other potential bidders contained standstill provisions, and whether any of those confidentiality agreements contained "don't-ask-don't-waive" ("DADW") language that presently prohibits these parties from making a topping bid for the Company.  Such information is material to UQM stockholders as a reasonable UQM stockholder would find it material and important to their appraisal decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

37.     UQM stockholders particularly need to know whether any of the two parties that conducted due diligence on the Company are currently forbidden from making superior proposals,

because these parties represent those most likely to deliver superior value to the Company's stockholders.

38.     Such information is material to UQM stockholders as a reasonable UQM stockholder would find it material and important to their appraisal decision whether or not parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

39.     Accordingly, Plaintiff seeks, among other things, the following relief: (i) enjoinment of the Proposed Transaction; or (ii) rescission of the Proposed Transaction in the event that it is consummated and to recover damages resulting from Defendants' misconduct.

## CLAIMS FOR RELIEF

## COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

40.     Plaintiff repeats and realleges each allegation set forth herein.

41.     As detailed herein, Defendants disseminated the materially incomplete and misleading Proxy specified above, which contained statements and omissions which, at the time and in the light of the circumstances under which they were made, were false and misleading with respect to material facts and which omitted to state material facts necessary to make the statements therein not misleading, in violation of Section 14(a) of the Exchange Act and SEC Rules promulgated thereunder, including SEC Rule 14a-9.

42.     By the use of the mails and by means and instrumentalities of interstate commerce and the facility of a national securities exchange, Defendants solicited and permitted the use of their names to solicit proxies or consents or authorizations in respect of the common stock of UQM.

43.     By virtue of their positions within the Company, the Individual Defendants were aware of this information and of their duty to disclose this information in the Proxy. The Proxy was prepared, reviewed, and/or disseminated by Defendants. The Proxy misrepresented and omitted material facts, including material information about the sale process for the Company, the consideration offered in the Proposed Transaction, and the actual intrinsic value of the Company's assets. Defendants were at least negligent in filing and disseminating the Proxy with these materially incomplete and misleading statements and omissions. Defendants have also failed to correct the Proxy and the failure to update and correct false statements is also a violation of Section 14 of the Exchange Act and SEC Rules promulgated thereunder.

44.     The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder would consider them important in deciding whether to vote in favor of and tender their shares in the Proposed Transaction. A reasonable investor would view a full and accurate disclosure as significantly altering the "total mix" of information made available in the Proxy and in other information reasonably available to stockholders.

45.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from immediate and irreparable injury, which defendants' actions threaten to inflict.

## COUNT II

### Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

46.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

47.     The Individual Defendants acted as controlling persons of UQM within the meaning of Section 20(a) of the Exchange Act, as alleged herein. By virtue of their positions as officers and directors of UQM and their participation in and awareness of the Company's business

and operations and their intimate knowledge of the materially false statements and omissions contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

48.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be false and misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or to cause the statements to be corrected.

49.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. Among other things, the Proxy at issue contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. Thus, they were directly involved in the making of that document.

50.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy purports to describe the various issues and information that they reviewed and considered – descriptions which had input from the Individual Defendants.

51.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

a) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

b) preliminarily and permanently, enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

c) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

d) awarding Plaintiff the costs of this action, including a reasonable allowance for the fees and expenses of Plaintiff's attorneys and experts; and

e) granting Plaintiff such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  March 1, 2019

    _s/ Donald J. Enright_
Donald J. Enright
Elizabeth K. Tripodi (to be admitted *pro hac vice*)
Brian D. Stewart
**LEVI & KORSINSKY LLP**
1101 30th Street, N.W., Suite 115
Washington, D.C. 20007
Telephone: (202) 524-4290
Facsimile: (202) 333-2121
Email: denright@zlk.com
      etripodi@zlk.com
      bstewart@zlk.com

*Attorneys for Plaintiff ETS
Logistics Inc.*